759 So.2d 471 (2000)
Royce Reuben TOMPKINS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01806-COA.
Court of Appeals of Mississippi.
March 14, 2000.
*472 Bernard Gautier, Pascagoula, Attorney for Appellant.
Office of the Attorney General by Pat Flynn, Attorney for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. This is a criminal appeal from the Circuit Court of Jackson County, Mississippi, where Royce Reuben Tompkins was convicted of capital rape and sentenced to life imprisonment in the custody of the *473 Mississippi Department of Corrections. Feeling aggrieved, Tompkins filed this appeal.

FACTS
¶ 2. Royce Reuben Tompkins, a thirty-seven year old man, was convicted of capital rape of K.D.[1], a thirteen year old child who was a friend of Tompkins's twelve year old daughter. Tompkins and K.D. began their ongoing sexual relationship in July 1997. The evening of Friday, September 26, 1997, K.D.'s parents could not find her. K.D.'s mother, E.L., phoned the Tompkins's residence, and no one there knew of K.D.'s whereabouts. Later in the night, K.D. called home and asked someone to pick her up from a local Quick-Stop. When she got home, K.D. was crying, and her mother took her to the hospital. Two days later K.D.'s parents learned she had been with Tompkins the previous Friday night, and they filed a capital rape charge against Tompkins.
¶ 3. On November 5, 1997, K.D.'s mother, E.L., was sleeping on the floor in K.D.'s room. Upon hearing noises, she turned on a flashlight to find Tompkins standing in the room with his pants off. E.L. called 911 as Tompkins fled through the window. Throughout the time of Tompkins's relationship with K.D., Tompkins was sending letters to K.D. professing his love for her. K.D. revealed this in her testimony and also revealed she and Tompkins engaged in several sexual encounters with one another, including on the night of her disappearance in September.

ARGUMENT AND DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 4. In this petition, Tompkins raises the following issues for our review, and we list these issues verbatim from Tompkins's brief:
I. THE COURT ERRED IN ADMITTING EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS OF THE DEFENDANT DONE SUBSEQUENT TO THE CRIME CHARGED IN THE INDICTMENT.
II. THE COURT FAILED TO PROPERLY INSTRUCT THE JURY ON THE ELEMENTS OF THE CRIME (S-1) AND GRANTED AN INSTRUCTION (S-2) WHICH AMOUNTED TO EITHER A DIRECTED VERDICT OR A PREJUDICIAL COMMENT ON THE WEIGHT OF THE EVIDENCE.
III. REPRESENTATION BY TRIAL COUNSEL AMOUNTED TO INEFFECTIVE ASSISTANCE OF COUNSEL.
IV. THE PENALTY IMPOSED IS CRUEL AND UNUSUAL PUNISHMENT.
V. DEFENDANT WAS SENTENCED UNDER THE WRONG STATUTE, THAT IS UNDER THE CODE SECTION THAT HAD BEEN REPLACED BY AN AMELIORATIVE AMENDMENT EFFECTIVE PRIOR TO HIS SENTENCING.
¶ 5. Our standard of reviewing the decision of a trial court is well-established. "A trial judge is allowed considerable discretion as to the relevancy and admissibility of evidence and, unless his judicial discretion is abused, this Court will not reverse his ruling." Edwards v. State, 737 So.2d 275(¶ 59) (Miss.1999) (citations omitted). "As a general rule, a sentence will not [be] disturbed on appeal so long as it does not exceed the maximum term allowed by statute." Stromas v. State, 618 So.2d 116, 122 (Miss.1993) (citations omitted).
¶ 6. Finding no error in Tompkins's conviction, we affirm as Issue I, Issue II, and Issue III. However, we find Tompkins's challenge of his sentence, in part, to be meritorious. Accordingly, we vacate the *474 sentence and remand for the limited purpose of re-sentencing.

ANALYSIS OF THE ISSUE PRESENTED

I. THE COURT ERRED IN ADMITTING EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS OF THE DEFENDANT DONE SUBSEQUENT TO THE CRIME CHARGED IN THE INDICTMENT.
¶ 7. Tompkins claims evidence of other crimes against him should not have been admitted in this case. Specifically, Tompkins argues testimony that he was found in K.D.'s bedroom the night in November 1997 should not have been admitted as this crime of "trespass" was a wholly separate crime in itself and was subsequent to the charge filed against him. Tompkins also claims evidence that he and K.D. engaged in oral sex prior to his arrest is inadmissible as this violates his due process rights and is highly prejudicial.
¶ 8. First, we examine acts in which Tompkins and K.D. engaged prior to the crime in question to determine if evidence of such acts is admissible. Both Tompkins and K.D. admit they had an ongoing sexual relationship prior to the September 1997 charges against Tompkins; however, Tompkins contests the admissibility of such evidence. For reasons detailed further in this opinion, we find evidence of these prior acts was properly admitted.
¶ 9. We look to the case of Barbetta v. State, 738 So.2d 258 (Miss.Ct.App.1999), where this Court was faced with the similar question as to whether or not evidence of prior sex acts with the same victim were admissible. In concluding such were admissible under Mississippi Rule of Evidence 404(b), we stated:
[E]vidence is generally held to be admissible which shows or tends to show prior offenses of the same kind committed by defendant with the prosecuting witness. The courts assign various reasons for the admission of this evidence such as corroboration of the offense charged, to show the intimate relation between the parties, the lustful disposition of defendant toward the prosecuting witness, and the probability of his having committed the offense charged.
Barbetta, 738 So.2d at 258 (¶ 7).
¶ 10. The Barbetta court also addressed similar cases in which prior sex acts with the same victim were admitted. In Davis v. State, 367 So.2d 445 (Miss.1979), the supreme court allowed the eleven year old victim to testify that the accused had sodomized her on a prior occasion; in Speagle v. State, 390 So.2d 990 (Miss.1980), the supreme court allowed evidence of prior incestuous conduct with the victim to be admitted; in Mitchell v. State, 539 So.2d 1366, 1372 (Miss.1989), the court concluded that under Rule 404(b) evidence of other sexual relations could only be admitted if such acts occurred between the defendant and the particular victim at issue. Barbetta, 738 So.2d at 261 (¶ 8).
¶ 11. In light of the aforementioned cases, evidence concerning the prior sex acts between Tompkins and K.D. was properly admitted.
¶ 12. Tompkins also argues evidence of acts subsequent to his arrest was improperly admitted. We agree but find the admission of this subsequent act to be harmless error. The evidence in this case overwhelmingly supported a conviction, and the statute on this crime was quite clear on elements of the crime. All of the evidence in this case points directly toward guilt: the testimonies of K.D., E.L., and Sgt. Deflanders, together with Tompkins's own statement to the police wherein he admitted to the crime, were sufficient to convict Tompkins.
¶ 13. The evidence in this case was overwhelmingly incriminating despite the wrongful admission of evidence of subsequent acts. Though we find this issue to be harmless and not grounds for reversal in the case sub judice, we do find the trial court should exercise more caution and be *475 more attentive when M.R.E. 404(b) issues are raised to prevent any further confusion or need to analyze whether the court's actions were proper or not.

II. THE COURT FAILED TO PROPERLY INSTRUCT THE JURY ON THE ELEMENTS OF THE CRIME (S-1) AND GRANTED AN INSTRUCTION (S-2) WHICH AMOUNTED TO EITHER A DIRECTED VERDICT OR A PREJUDICIAL COMMENT ON THE WEIGHT OF THE EVIDENCE.
¶ 14. Tompkins argues two of the State's jury instructions were improper statements of the law. The first instruction at issue regards the elements of the crime and states:
The Court instructs the Jury that the defendant, Royce Reuben Tompkins, has been charged with the crime of Capital Rape for having had unlawful sexual intercourse with [K.D.], a female under the age of fourteen (14) years of age by actual penetration of her private parts. If you find from the evidence in this case, beyond a reasonable doubt, that:
(1) Between June 1997 thru September 1997, in Jackson County, Mississippi;
(2) The Defendant, Royce Reuben Tompkins, was a person eighteen (18) years of age or older; and
(3) [K.D.] was a female under the age of fourteen (14) years; and
(4) The Defendant, Royce Reuben Tompkins, had sexual intercourse with [K.D.] by actual penetration of her private parts; then you shall find the Defendant, Royce Reuben Tompkins, guilty of Capital Rape. If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant, Royce Reuben Tompkins, not guilty of Capital Rape.
The pertinent part of this instruction reads, "The Defendant, Royce Reuben Tompkins, had sexual intercourse with [K.D.] by actual penetration of her private parts." Tompkins says this was improper as it failed to include penetration by "the penis" or the "sex organ" which had to be included in the instruction as it was an essential element of the crime. We disagree.
¶ 15. A similar issue regarding jury instructions arose in Gray v. State, 728 So.2d 36 (Miss.1998). In Gray, the issue was whether or not the instruction containing "sexual intercourse" as the only description of the violative act was sufficient to instruct the jury on the elements of the crime or whether the actual statutory language must be present. The Gray court said:
The instruction did not have to mention sexual intercourse to have been sufficient.... This Court has long held that such an instruction ... sufficiently sets out the elements of rape.... The instruction must be considered as a whole, and the words contained therein given their customary, ordinary and usual meaning.
Id. at (¶¶ 113-115). Applying the Gray law to the case sub judice, sexual intercourse is widely recognized as meaning penetration by the penis; thus, this instruction was adequate as given.
¶ 16. The second instruction at issue involved whether or not force was used. The instruction states, "The Court instructs the Jury that it is immaterial whether the Rape was accomplished by force or violence or against the will of [K.D.], if [K.D.] was under the age of 14 years."
¶ 17. Tompkins argues this instruction amounts to a directed verdict instruction as it instructs that rape was committed. In light of the previous instruction regarding whether or not to find rape occurred, it is evident the second instruction was only to be applied if the jury found the elements detailed in the prior instruction were met. "[J]ury instructions are to be read as a whole and no one instruction is to be taken out of context of the whole." Williams v. State, 667 So.2d 15, 24 (Miss. *476 1996) (citing Mackbee v. State, 575 So.2d 16 (Miss.1990)). Reading this instruction with the afore described instruction, we find no problem with this instruction, as well.

III. REPRESENTATION BY TRIAL COUNSEL AMOUNTED TO INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 18. "A claim of ineffective assistance of counsel is judged by the standard in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two inquiries under the Strickland standard are (1) whether counsel's performance was deficient, and, if so, (2) whether the deficient performance was prejudicial to the defendant in the sense that our confidence in the correctness of the outcome is undermined." Finley v. State, 739 So.2d 425(¶ 5) (Miss.Ct.App.1999) (citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052).
¶ 19. Tompkins lists over two pages of what he sees as deficiencies in his counsel's representation of him at trial. Applying the Strickland test to Tompkins's situation, however, all the claims appear not to be outcome determinative. That is, even if trial counsel did make some poor choices, the outcome of guilty was correct, as stated before, and these mistakes did not interfere with the jury's reaching the proper verdict as dictated by the evidence.
¶ 20. Tompkins fails to cite any authority with this issue in his first brief, but then does in his reply brief after appellee's revelation of the fact. "`[I]t is the duty of an appellant to provide authority and support of an assignment.' Further, `if a party does not provide this support this Court is under no duty to consider assignments of error when no authority is cited.'" Guerrero v. State, 746 So.2d 940 (¶ 7) (Miss.Ct.App.1999). Arguably, this issue is not properly before this Court. Nonetheless, if we consider the authority cited in the reply brief for this issue, there still is no merit to the argument that Tompkins's trial counsel was ineffective.
IV. THE PENALTY IMPOSED IS CRUEL AND UNUSUAL PUNISHMENT.
V. DEFENDANT WAS SENTENCED UNDER THE WRONG STATUTE, THAT IS UNDER THE CODE SECTION THAT HAD BEEN REPLACED BY AN AMELIORATIVE AMENDMENT EFFECTIVE PRIOR TO HIS SENTENCING.
¶ 21. We discuss Tompkins's last two assignments of error together for reasons that will become apparent. First "[s]entencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Handford v. State, 736 So.2d 1069(¶ 11) (Miss.Ct.App. 1999) (citing Reynolds v. State, 585 So.2d 753, 756 (Miss.1991)).
¶ 22. The Mississippi Code defines the definition and punishment for capital rape in our state:
(1) The crime of statutory rape is committed when ... (b) A person of any age has sexual intercourse with a child who: (i) Is under the age of fourteen (14) years; (ii) Is twenty-four (24) or more months younger than the person; and (iii) Is not the person's spouse ... (c) Neither the victim's consent nor the victim's lack of chastity is a defense to a charge of statutory rape.
(2) Upon conviction for statutory rape, the defendant shall be sentenced as follows:... (c) If eighteen (18) years of age or older and convicted under paragraph (1)(b) of this section, to imprisonment for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years.
Miss.Code Ann. § 97-3-65 (Supp.1999).[2]
¶ 23. Tompkins argues his punishment of the maximum allowed by law constituted *477 cruel and unusual punishment under the Eighth Amendment. Tompkins further argues the trial court was unaware of the amendment to § 97-3-65 and did not know another option existed for sentencing other than life imprisonment. As supported by the above authority, sentences falling within the statutory guidelines of a particular crime are deemed appropriate.
¶ 24. "Even as to those circumstances for which the statutes provide mandatory sentences, the punishment must be weighed against the prohibition imposed in the Eighth Amendment to the United States Constitution against cruel and unusual punishment." Davis v. State, 724 So.2d 342(¶ 14) (Miss.1998). In conducting a proportionality test weighing the punishment against the crime, the United States Supreme Court case Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), set the standard to follow. In Fleming v. State, 604 So.2d 280 (Miss.1992), the Mississippi Supreme Court applied the Solem test:
[T]he general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute. This Court will review a sentence, however, where it is alleged that the penalty imposed is disproportionate to the crime charged ... The United States Supreme Court set out three factors for courts to consider when conducting a proportionality analysis. The criteria include: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions.
Fleming, 604 So.2d at 302-03.
¶ 25. Tompkins cites Clowers v. State, 522 So.2d 762 (Miss.1988), and draws an inaccurate conclusion that Clowers's sentence was grossly disproportionate to his crime. In Clowers, a man convicted of forging a $250 check was given the maximum sentence by law as an habitual offender and argued such sentence was disproportionate to his crime. The trial court exercised the Solem proportionality test and found such sentence was too harsh and reduced it.
Our approval of the sentence in [this case] should not be taken to intimate that reduced sentences for habitual offenders might become the rule. Solem v. Helm does not represent a de facto grant of sentencing discretion, but, rather, ties proportionality to the three-step analysis outlined therein ... [A]s the Supreme Court acknowledged in Solem v. Helm, "`outside the context of capital punishment, successful challenges to the proportionality of a particular sentence [will be] exceedingly rare....'" We should give "substantial" deference to the Legislature in the present context, and, thus, extended analysis rarely will be necessary.
Clowers, 522 So.2d at 765 (citations omitted). As stated above by the trial judge, Clowers is the exception to the rule. Thus, Tompkins's argument that his sentence is *478 disproportionate for his crime is without legal or factual merit. However, while not disproportionate, Tompkins's sentence is problematic in that the trial court employed an outdated statute in the imposition of Tompkins's sentence.
¶ 26. Tompkins argues that the trial judge failed to consider the July 1, 1998 amendment to § 97-3-65 which altered the sentencing scheme for the crime of capital rape. Prior to the amendment, the sentencing authority had two options: life in prison or death. The amended statute eliminates the death penalty option and provides a sentence ranging from "imprisonment for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years." Miss.Code Ann. § 97-3-65(2)(c) (Cum.Supp.1999).
¶ 27. As discussed above, as long as the sentence was within statutory guidelines, we will not reverse. However, while Tompkins's sentence was within the statutory limits, his argument remains meritorious in that the trial court sentenced Tompkins to a life term of imprisonment under the mistaken belief that this was his only option. This error on the part of the trial court is evidenced in the record. Tompkins's attorney objected to the statutory sentencing scheme as being unconstitutional. This objection drew the following response from the trial judge:
By the Trial Court: All right. Well, I will overrule the objection. The Legislature has provided by statute that the punishment for this crime will be life imprisonment. Of course, they also provided the death penalty, but the U.S. Supreme Court has decreed that the death penalty cannot be given in a case where, in a capital rape case where death was not taken, or someone was not killed. So, based on the statute then, I'll sentence you to serve a term of life imprisonment....
Accordingly, it is apparent that the trial court sentenced Tompkins to a life term because he thought that such sentence was his only option.
¶ 28. In Daniels v. State, 742 So.2d 1140, 1145 (Miss.1999), our unanimous supreme court held that "when a statute is amended to provide for a lesser penalty, and the amendment takes effect before sentencing, the trial court must sentence according to the statute as amended." Having been sentenced on September 1, 1998, Tompkins was entitled to be sentenced under the amended statute which became effective two months prior to the imposition of Tompkins's sentence. While the trial court may well impose upon Tompkins the same sentence herein imposed, such sentence must be imposed under the proper statute. Accordingly, we vacate the sentence of life imprisonment and remand this cause for the limited purpose of re-sentencing under the correct statutory scheme.
¶ 29. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL RAPE IS AFFIRMED. THE SENTENCE OF LIFE IMPRISONMENT IS VACATED AND THIS CAUSE REMANDED FOR THE LIMITED PURPOSE OF RESENTENCING UNDER THE CORRECT STATUTORY SCHEME. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR.
NOTES
[1] To protect the child's identity, we have opted to use her initials rather than her name.
[2] Throughout this opinion reference is made to the crime of "capital rape" since this is the term used in both the indictment and in the judgment. A discrepancy lies, however, in deciphering which code section applies to the crime of capital rape and which section applies to the separate crime of statutory rape.

Prior to 1998, § 97-3-67 was the statutory rape provision (victim between ages of 14-18) and § 97-3-65 was the capital rape provision (victim under 14). In 1998, § 97-3-65 was amended to encompass both of these sections and § 97-3-67 was repealed. The current § 97-3-65 does not use the term "capital rape" but entitles its section "statutory rape" and includes elements of both capital and statutory rape, differentiating the elements and punishments of each.
Reading further into the amended § 97-3-65 we find (1)(a) is the statutory rape provision and (1)(b) is the capital rape provision. Additionally, the capital rape punishment is found in (2)(c) wherein the punishment is changed from the previous penalty of life imprisonment or death penalty to the new penalty of twenty years to life imprisonment. This amendment does not affect the case sub judice as the elements of Tompkins's crime are met according to both the old and the new sections.