IRVING, J.,
for the Court.
¶ 1. Troy Leon Fisackerly was convicted in the Circuit Court of Webster County of statutory rape and sentenced to twenty years, in the custody of the Mississippi Department of Corrections with five years suspended. Aggrieved by this conviction and sentence, Fisackerly has perfected this appeal and raises the following issues as error: (1) whether the circuit court erred when it allowed the State to introduce certain audiotapes containing incriminating statements and allegations of prior bad acts committed by him, and (2) whether the circuit court erred in allowing the minor to testify concerning prior acts committed by him with the minor.
¶ 2. We find no reversible error; therefore, we affirm the decision of the circuit court.
FACTS
¶ 3. Prior to June 15, 2001, Troy Leon Fisackerly and Shirley Jones had lived together approximately eight years although they were not married. Three minor children, including J.J. lived with them.[1] Fisackerly was not the father of J.J. although he was the father of one of the children.
¶4. On June 15, 2001, Fisackerly and Shirley got into an argument and Shirley took her children to Cindy Reeves’s house. Fisackerly later picked up J.J. and her younger brother and transported them to the home of his brother, Billy Fisackerly. That night, Fisackerly slept in the same room with the children. Initially Fisackerly shared the bed with J.J.’s brother. However, later on during the night, Fi-sackerly moved to the bed where J.J. was located and started feeling on her vagina. He later had intercourse with J.J. until he had an orgasm. Fisackerly then got up from the bed, looked to see if his brother was awake, and returned to the bed where J.J.’s brother was sleeping.
¶ 5. Shortly after this incident, Shirley heard from her sister that Fisackerly may have raped J.J. Consequently, she and her three minor children moved out of the residence with Fisackerly without informing him as to their new location. Shirley, however, continued to talk to Fisackerly by telephone.
¶ 6. After moving out of the residence with Fisackerly, Shirley contacted Officer Roger Miller of the Mathison Police Department and informed him about the rape allegations. Officer Miller referred Shirley to Beverly Baker at the Department of Human Services in Webster County. Baker, in turn, referred Shirley to the Webster County district attorney’s office. William Blackmon, the domestic violence investigator for the district attorney, met *370 with Shirley and advised her that, based on J.J.’s statements alone, there was not enough evidence to charge Fisackerly. Investigator Blackmon further instructed Shirley that more evidence would need to be gathered, particularly tape-recorded, self-incriminating statements from Fisack-erly.
¶ 7. Subsequently, Shirley produced and turned over to Investigator Blackmon a collection of micro-cassette tapes which she had recorded of conversations between her and the children and Fisackerly. She later signed an affidavit charging Fisack-erly with the June 15, 2001 statutory rape of J.J. who, at the time of the incident, was twelve years old.
¶ 8. Fisackerly was indicted and convicted of the charge, resulting in this appeal after his post-trial motion for new trial or judgment notwithstanding the verdict was denied by the circuit court.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 9. Our standard for reviewing the decisions of a circuit court is well-established. “The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused. The discretion of the trial court must be exercised within the boundaries of the Mississippi Rules of Evidence.” Palmer v. City of Oxford, 860 So.2d 1203, 1207-08(¶ 10) (Miss.2003) (quoting McIlwain v. State, 700 So.2d 586, 590 (Miss.1997)).

1. Admission of the Audiotapes

¶ 10. Issues one and two are interrelated; therefore, we combine them for discussion. With respect to the tapes, Fisackerly first argues that his right against self-incrimination was violated when the circuit court allowed the jury to consider both audiotapes and transcripts of the tapes of his telephone conversations with various members of Shirley’s family. He explains that, because Shirley was instructed by the office of the district attorney as to the type of evidence that was needed to bring charges against him and the method for acquiring such information, Shirley and her children became agents of the State. According to Fisackerly, the Joneses as agents of the State, should have been subject to the same Miranda requirements as law enforcement officers when they engaged in investigative activities to obtain incriminating statements from him. Citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Hopkins v. State, 799 So.2d 874 (Miss.2001), Fisackerly concludes that the jury verdict should be reversed because the trial court admitted the audiotapes and transcripts without determining whether the Joneses had met the Miranda requirements.
¶ 11. The circuit court considered Fi-sackerly’s objection to the tape evidence. After receiving confirmation from both counsel that Fisackerly was not in police custody at the time that he made his statements on the audiotapes, the circuit judge gave the following response:
Miranda applies to custodial interrogations or statements, and it does not apply to statements when he is not in custody and has the liberty to come and go as he pleases, which from what y’all have told me, is the situation in this ease. So that motion is overruled.
¶ 12. We agree with the circuit court that the manner by which the Joneses obtained the audiotapes from which the transcripts were made does not preclude their admission into evidence. The evidence does not show, nor does Fisackerly argue, that he was in the custody of the police while his girlfriend recorded their *371 conversations. He does assert, as stated earlier, that the Joneses acted as agents of the State when they produced the audiotapes. We, however, are unconvinced by this argument and do not find that Fisack-erly was under “interrogative custody” when the Joneses recorded their telephone conversations with him.
¶ 13. Alternatively, Fisackerly argues that his giving of statements to the Joneses was not voluntary. We likewise find this contention to be meritless. While the Joneses recorded their conversations with Fisackerly, we do not see how their actions deprived Fisackerly of his freedom of action in any significant way. Fisackerly voluntarily talked to the Joneses by telephone and gave incriminating statements which they recorded. Their motive, though not communicated to Fisackerly, is immaterial. And they certainly were not law enforcement officials. Further, Fi-sackerly has not alleged or shown that his statements were extracted as a result of threats or force by anyone, much less a law enforcement official.
¶ 14. Fisackerly next argues that the circuit court erred and violated Rules 403 and 404(b) of Mississippi Rules of Evidence when it admitted both the audiotapes and J.J.’s testimony because the tapes and J.J.’s testimony contained allegations of prior bad acts committed by him.
¶ 15. The State offered both the audiotapes and the testimony of J. J. as evidence to demonstrate that Fisackerly had sexual contact twice with J.J. between two to three years before June 15, 2001. Counsel for Fisackerly contemporaneously objected to this evidence. The circuit court overruled the objection and allowed the State to introduce the tapes for the limited purpose of showing Fisackerly’s lustful and lascivious disposition towards J.J. Contemporaneously with the playing of the audiotapes, the court gave a limiting instruction. At the close of the evidence, the court also gave a written limiting instruction.
¶ 16. In making his Rule 404(b) argument, Fisackerly correctly acknowledges that similar evidence has been admitted for the purpose of showing the lustful and lascivious disposition of the accused towards the victim. Crawford v. State, 754 So.2d 1211(¶ 23) (Miss.2000); Tompkins v. State, 759 So.2d 471 (¶¶ 8-11) (Miss.Ct.App.2000). However, he attempts to distinguish Crawford and Tompkins in several aspects.
¶ 17. First, Fisackerly argues that Crawford and Tompkins are distinguishable because they involved evidence of “patterned” or “continuing” sexual conduct between the accused and the victim that occurred in the months immediately preceding the charged crimes. Citing Darby v. State, 538 So.2d 1168 (Miss.1989), Fi-sackerly argues that evidence of an ongoing or continuous pattern of sexual conduct between himself and J.J. first had to be shown before such evidence could be admitted to demonstrate his lustful and lascivious disposition towards J.J.
¶ 18. Fisackerly’s reliance on Darby, is misplaced. Darby does not deal with prior sexual acts between an accused and a minor victim. Darby addresses prior bad acts evidence generally under Rule 404(b), while Tompkins and Crawford speak to prior acts of sexual conduct between an accused and a minor victim. We find Tompkins and Crawford, rather than Darby, controlling. Neither Tompkins nor Crawford holds that the prior sexual acts, between the victim and the accused, and the charged conduct must be ongoing or very recent in time before evidence of the prior sexual encounters may be admitted into evidence in the trial of the accused on the charged conduct. Both Tompkins and Crawford state that evidence of prior sexu *372 al contact between the defendant and the victim may be admitted for the limited purpose of showing the lustful and lascivious disposition of the accused towards the victim. Tompkins, 759 So.2d at 474(¶ 9); Crawford, 754 So.2d at 1220(¶ 23). We do not address whether the time interval between the past sexual acts, involving the accused and the minor victim, and the charged sexual acts, between the accused and the victim, may never be relevant or material in a trial of the accused for the latter sexual acts. We simply find that neither Tompkins nor Crawford addresses this issue, and there is no need for us to address it either. But, even if we were to address the relevancy of the passage of time, we would find that the passage of time here does not bar admission of the evidence regarding the past sexual encounters between Fisackerly and J.J. As already mentioned, J.J. was twelve years old at the time of the incident charged in the indictment. She testified that she and Fi-sackerly had engaged in sexual encounters at least twice before, when she was ten and eleven years old.
¶ 19. Fisackerly next attempts to draw a distinction between cases involving sexually-based assaults on a victim and those involving sexual intercourse between the accused and the victim. According to Fi-sackerly, the State’s demonstration of the lustful and lascivious disposition of Fisack-erly toward J.J. would only been appropriate if the case against him had been a charge of sexual assault against the victim. Because the charge against him involves sexual intercourse with the victim, Fisack-erly explains that the evidence of his prior sexual intercourse with the victim only succeeded in demonstrating that he acted in conformity with his prior bad acts.
¶20. We note that Fisackerly cites no authority to support his argument of a distinction between evidence of prior sexual assaults against a victim by an accused and evidence of prior sexual intercourse between an accused and a minor victim, as it relates to demonstrating the lustful and lascivious disposition of an accused toward his minor victim. We therefore need not address his argument. Byrom v. State, 863 So.2d 836, 863(¶ 84) (Miss.2003).
¶ 21. Fisackerly’s next argument is that the circuit court applied the wrong legal standard when it conducted its Rule 403 analysis regarding the evidence of prior sexual acts committed by Fisackerly against J.J. According to Fisackerly, “The correct legal standard as laid out in Rule 403 is that the probative value must substantially outweigh the prejudicial effect.”
¶ 22. We first observe that Fisackerly failed to make a contemporaneous objection as to the standard used by the circuit judge in ruling that the audiotapes and J.J.’s testimony would be admitted. Therefore, we need not address this issue. Jones v. State, 857 So.2d 740, 745(¶ 17) (Miss.2003). Notwithstanding this procedural bar, we find no merit in Fisackerly’s position.
¶ 23. “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403.
¶ 24. Our standard of review of a circuit judge’s decision to admit certain evidence is an abuse of discretion standard. As we have already noted, the circuit judge admitted the audiotapes and testimony of J.J. for the limited purpose of showing that Fisackerly exhibited a lustful and lascivious disposition towards the victim. This ruling is in accord with the holdings in Crawford and Tompkins. In making his ruling, the circuit judge said, “I find that the probative value does outweigh the prejudicial effect because it does show the *373 lustful, lascivious or tends to show the lustful, lascivious disposition of the Defendant toward the victim.” Mindful of our standard of review, we cannot say that the circuit judge abused his discretion. Further, based upon our review of the circuit judge’s ruling, we find no merit in Fisack-erly’s claim that the circuit judge utilized the wrong legal standard in deciding that the probative value of the prior sexual acts evidence was not substantially outweighed by the danger of unfair prejudice.
¶ 25. We, therefore, affirm Fisackerly’s conviction and sentence.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF WEBSTER COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.

. In order to protect the identity of the minor victim, we have substituted fictitious names for her and her mother. The mother is referred to as Shirley Jones and the victim as ''J.J.”