**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2016-KA-01704-COA**

**LESLIE DANIELLE DEWITT A/K/A LESLIE D. DEWITT**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

DATE OF JUDGMENT:            10/17/2016
TRIAL JUDGE:            HON. LAWRENCE PAUL BOURGEOIS, JR.
COURT FROM WHICH APPEALED:    HANCOCK COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:            JIM L. DAVIS, III
ATTORNEY FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
                        BY: LAURA HOGAN TEDDER
DISTRICT ATTORNEY:            JOEL SMITH
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:            AFFIRMED: 05/08/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Leslie Danielle Dewitt appeals her conviction for two counts of touching a child for

lustful purposes pursuant to Mississippi Code Annotated section 97-5-23(2) (Rev. 1998).

Dewitt argues that a new trial is warranted because of the service of an unqualified juror who

withheld disqualifying information, the trial court incorrectly denied a motion to prevent the

admission of a recorded conversation involving the appellant, and the trial court committed

reversible error in denying the introduction of a lesser-included jury instruction.  We find no

error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2. Leslie Danielle Dewitt, a female and once junior high and high school girls' basketball coach at Hancock High School, was convicted of two counts of touching a child for lustful purposes. The child, Bethany Foster,[1] also female, was a tenth-grade basketball player under Dewitt at Hancock.

¶3. Foster testified at trial that her and Dewitt's player-coach relationship, which began in junior high school and through basketball, developed over time during her high school years. Foster would routinely practice with Dewitt after school-hours and babysit her son at Dewitt's home. The two maintained a close relationship for years prior to trial.

¶4. Foster also testified that while in high school in December 2009, she was sixteen years old and spending the night at Dewitt's house with a teammate. Foster stated that after everyone else had gone to sleep, Dewitt committed sexual acts against her. Foster testified that Dewitt kissed Foster, placed her hand on Foster's vagina, and placed her fingers in Foster's vagina. Foster testified that the physical aspect of their relationship was repeated on more than twenty occasions from December 2009 until July 2010. It became routine. Foster also testified that during this time Dewitt placed her mouth on Foster's vagina and also used a sex toy on Foster's genitals. Dewitt denies that any sexual conduct ever occurred.

¶5. Foster did not tell anyone about the nature of the relationship. She testified that it was too embarrassing and that she was concerned what her friends and family would think given their religious background and the impact it could have on Dewitt. However, despite their best efforts, some semblance of a relationship between the two became evident to others, and

---

[1] For privacy purposes, we substitute fictitious names for minor children.

after repeated failed attempts by Hancock school administrators to get Dewitt to distance herself from Foster, Dewitt was forced to resign. Foster and Dewitt remained in contact.

¶6. In January 2013, Foster returned home from college, struggling with depression and anxiety that she testified stemmed from her past relationship with Dewitt and the subsequent confusion it caused her. While home, Foster told her mother, Monique, about the sexual relationship between her and Dewitt for the first time.

¶7. Monique then took Foster to the police station to report the misconduct. Monique testified at trial that she later decided to confront Dewitt about the accusations and record the conversation on her cell phone. After letting the police know of her intentions, the police asked if she would be willing to use their recording device, instead of her cell phone, to record the conversation. Monique agreed. The police provided Monique with a recording device and followed her to meet Dewitt and observe the encounter from a distance. The police did not offer Monique any advice for techniques to use during the conversation or assistance in carrying out the act.

¶8. Monique confronted Dewitt in the parking lot of Pearl River High School where Dewitt had just finished coaching a basketball game. While Monique did not physically force Dewitt into her car, Monique threatened to "make a scene" if Dewitt did not agree to get in the car and speak with her. Dewitt and Monique got into Dewitt's car and Monique recorded the conversation unbeknownst to Dewitt. In the recording, Dewitt made allegedly incriminating statements without instruction regarding *Miranda* rights.[2] After the encounter,

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Monique returned the recording and recording device to the police. Later that night, Dewitt went to the police station on her own accord where she was informed of her *Miranda* rights before giving a statement. She was arrested about two months later in March 2013. Prior to trial, Dewitt filed a motion in limine to exclude the recording. The motion was denied, and the recording was played for the jury over Dewitt's objection.

¶9. After jury deliberations began, but before the jury reached a verdict, the circuit clerk discovered that one of the jurors, Simmons, was not a registered voter of Hancock County and had only lived in the county for two months prior to trial. As the trial judge stated, Simmons appeared in court because he was responding to a jury summons that was issued to his address in Hancock County. Although it is believed that the summons was meant for a prior occupant of the same address, Simmons received the summons, appeared in court, and went through all of the juror qualification process.

¶10. Before trial, the trial judge, the State, and the defense counsel all agreed that to the best of their knowledge the trial court properly impaneled and swore in the jury, a complete and proper voir dire was conducted, and all of the jurors were accepted in accordance with the competent juror qualifications under Mississippi Code Annotated section 13-5-1 (Rev. 2012). The trial judge states in the record that he "specifically ask[ed] the question, you must be either a qualified elector or resident freeholder of the [county] for more than one year." However, there is no evidence of this actual line of questioning of the jurors by the trial judge or the jurors' responses to the questions in the record.

¶11. While the information regarding how long Simmons had lived in the county was

available to each side's counsel prior to trial on the juror's information card, his voter registration status was not. Dewitt alleges that Simmons withheld information that would have allowed her to strike him for cause. Again, according to the record, the parties at trial seem to agree that the jury was properly questioned during voir dire, but there is no record of the actual questioning or responses from the jurors. Upon hearing of the clerk's discovery, and before a verdict was reached, Dewitt quickly moved for a mistrial based on Mississippi Code Annotated section 13-5-1. However, according to the trial judge, Simmons did not intentionally do anything wrong. He responded to a summons issued to his address, was subjected to voir dire by both sides, and was accepted by each. Accordingly, the motion was denied.

¶12. The jury rendered the verdict of guilty of Counts III and IV for touching of a child for lustful purposes. Dewitt was subsequently sentenced to the maximums of fifteen years for Count III and fifteen years for Count IV to run consecutively for a total of thirty years in the custody of the Mississippi Department of Corrections. The sentence is set to be served day-to-day without the possibility of pardon, parole, early release, or suspension. Dewitt was further ordered to register as a sex offender.

## ANALYSIS

I. *Whether the trial court correctly denied Dewitt's Motion for New Trial despite the service of an unqualified juror.*

¶13. Dewitt argues that Juror 3-26, Simmons, was an incompetent juror because he was not a registered voter in Hancock County at the time of trial and had only lived in Hancock County for two months prior to trial. She alleges that Simmons withheld this information

5

which would have supported a strike for cause. Because Simmons served on the jury despite being unqualified, Dewitt argues for a mistrial and that she should be granted a new trial.

¶14. The "standard of review for the denial of a motion for mistrial is abuse of discretion." *Spann v. State*, 771 So. 2d 883, 889 (¶9) (Miss. 2000). "[A] motion for a new trial challenges the weight of the evidence." *Jones v. State*, 154 So. 3d 872, 880 (¶24) (Miss. 2014). "When reviewing a challenge to the weight of the evidence, the Court will disturb a jury verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* (quotation marks omitted). The decision to declare a mistrial is in the sound discretion of the court. *Lockridge v. State*, 768 So. 2d 331, 337-38 (¶12) (Miss. Ct. App. 2000). This decision should not be disturbed unless it was an abuse of discretion. *Bass v. State*, 597 So. 2d 182, 191 (Miss. 1992).

¶15. In order to be qualified as a competent juror, residency in the county for at least one year or voter registration in the county is required. Mississippi Code Annotated section 13-5-1 (Rev. 2012) provides, in pertinent part:

> Every citizen not under the age of twenty-one years, who is either a qualified elector, or a resident freeholder of the county for more than one year, is able to read and write, and has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five years and who is not a common gambler or habitual drunkard, is a competent juror. No person who is or has been within twelve months the overseer of a public road or road contractor shall, however, be competent to serve as a grand juror. *The lack of any such qualifications on the part of one or more jurors shall not, however, vitiate any indictment or verdict.*

(Emphasis added). "This Court is required to reverse the trial court when this Court clearly is of the opinion that a juror was not competent." *Langston v. State*, 791 So. 2d 273, 281

6

(¶17) (Miss. Ct. App. 2001).

¶16.    As confirmed by both sides during oral argument, although there is no record of the actual section 13-5-1 questioning of the jurors by the trial judge, both the State's and the Appellant's counsel stipulated the questions were asked of the jury.  When the trial court asked whether Simmons was to be accepted, both sides agreed, and neither side objected during the empaneling of the jury.  Dewitt's attorney did not object to Simmons's participation until after the jury began deliberating.

¶17.    Typically, "[i]f a party fails to object to a juror before the jury is empaneled, that party waives any right to complain of the jury's composition at a later time." *Langston*, 791 So. 2d at 281 (¶17).  "However, there are certain circumstances where a juror may be excused after he has already been accepted." *Id*.

¶18.    A juror may be dismissed after the jury has been empaneled in two instances: (1) where the juror is unable to perform his duties; and (2) where the juror is disqualified. *McNeal v. State*, 617 So. 2d 999, 1003 (Miss. 1993) (citing Miss. Code Ann. § 13-5-1).  A juror may be disqualified if he withholds or misrepresents information upon being asked a "clearly worded" question during voir dire.  *McNeal*, 617 So. 2d at 1003; *see* Miss. Code Ann. § 13-5-67 (Rev. 2012).  This is what Dewitt alleges happened.  "If information is withheld by a juror and the evidence shows that a fuller and more complete response or any response at all would have provided a legitimate basis for challenge, the trial court must grant a new trial and if it does not, this Court must reverse on appeal." *Langston*, 791 So. 2d at 281 (¶18) (citing *Myers v. State*, 565 So. 2d 554, 558 (Miss. 1990)).

7

¶19. Upon examination of a juror's competency, "[i]t is the duty of the trial court to assess whether the question asked of the juror was '(1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited.'" *Langston*, 791 So. 2d at 281 (¶19) (quoting *Odom v. State*, 355 So. 2d 1381, 1383 (Miss. 1978)). "If the court finds that these inquiries point unequivocally to the fault of the juror, it then must ask whether there was prejudice to the defendant resulting from the juror's failure to respond accurately to a voir dire question." *Id.* The defense, in this case Dewitt, bears the burden of showing she was "prejudiced by the jury selected or that the jury was biased or less than impartial." *George v. State*, 812 So. 2d 1103, 1108 (¶22) (Miss. Ct. App. 2001). Since "there is no firm rule guiding the courts in every given situation of voir dire examination, these matters must be determined on a case by case basis." *Langston*, 791 So. 2d at 281 (¶19).

¶20. We cannot today know how the trial judge would have conducted his voir dire if Dewitt had objected or raised these issues in a timely manner before the trial judge. According to accounts in the record by the trial judge, the State's attorney, and Dewitt's attorney, the trial judge clearly asked the necessary and relevant questions to the jury to satisfy Mississippi Code Annotated section 13-5-1— even though the record is void of the actual questioning and juror responses.

¶21. Dewitt argues on appeal that Simmons's service on the jury prejudiced her because he had not been a resident of Hancock County long enough to appreciate its close-knit community feel. However, Dewitt's attorney's actions stand in direct contradiction to her

8

argument. Dewitt's attorney made no objection as to Simmons's admission despite his juror card plainly stating he had only lived in Hancock County for two months. Additionally, two other jurors did not even provide an answer to the term-of-residency question on their jury cards, one of whom served on the jury with Simmons. Dewitt's attorney also failed to ask any further questions regarding Simmons's voter registration status. When Dewitt and her attorney decided between challenging Simmons or another juror with their last challenge, Dewitt's attorney chose the other juror and made no request for additional challenges, despite knowing that Simmons had only lived in the County for two months.

¶22.     Dewitt states that Simmons actively withheld information from the court which would have supported a strike for cause, but there is no indication in the record of Simmons giving misleading or incomplete answers. There is no evidence of fault on Simmons's part. By all accounts he served as a fair and impartial juror. "[A] party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter." *Myers*, 565 So. 2d at 557. Additionally, "any flaws in the judge's examination of the panel are mitigated by the leeway allowed defense counsel in his phase of the voir dire." *Bell v. State*, 725 So. 2d 836, 844 (¶10) (Miss. 1998). Dewitt's attorney did not take advantage of the leeway allowed to him during the voir dire, so we cannot determine that any missing information on Simmons's part was "unequivocally . . . the fault of the juror," nor do we find there was adequate prejudice against the defendant. *Langston*, 791 So. 2d at 281 (¶19).

¶23.     Looking at the similar case of *Bell*:

> [h]aving said this, we have also examined the record of the voir dire by the
> trial court as to possible plain error, and although we cannot say that the

9

> manner of examining the jury panel was desirable, its defects do not rise to the level of fundamental constitutional error. We do note, however, that trial judges should exercise caution in performing their profound duty to select fair, impartial and competent juries. Words coming from the judge bear special weight with those citizens who are asked to try the facts of cases, both civil and criminal.

*Bell*, 725 So. 2d at 844 (¶11). While we acknowledge that Simmons's apparent status as a new resident who had not registered to vote in the county is in conflict with Mississippi Code Annotated section 13-5-1, "we agree with the case law and find that this was not such an error as to require the verdict and sentence in this case to be overturned." *Wright v. State*, 805 So. 2d 577, 580 (¶9) (Miss. Ct. App. 2001). We do not find that "there was prejudice to the defendant resulting from the juror's failure to respond accurately to a voir dire question" so as to constitute a new trial. *Langston*, 791 So. 2d at 281 (¶19). Further, as it is stated in section 13-5-1, "[t]he lack of any such qualifications on the part of one or more jurors shall not . . . vitiate any indictment or verdict."

¶24. Based on our review of the record, we cannot say this was an abuse of discretion. We find no merit to this issue.

> II. *Whether the trial court abused its discretion in denying Dewitt's motion to exclude the recorded conversation between Dewitt and the victim's mother.*

¶25. Dewitt next argues that the admission of the recorded conversation between Monique and Dewitt violated Dewitt's constitutional rights. Dewitt alleges that Monique was acting as an agent of law enforcement interrogating Dewitt and her recorded statements, which were introduced at trial, were elicited without a *Miranda* warning. Dewitt further alleges that her Fourth and Sixth Amendment rights were violated.

10

¶26. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Hughes v. State*, 735 So. 2d 238, 270 (¶134) (Miss. 1999). "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the 'totality of the circumstances,' the statement is the product of the accused's 'free and rational' choice." *U.S. v. Rogers*, 906 F.2d 189, 190 (5th Cir. 1990).

¶27. "The purpose of *Miranda* warnings is to protect the individual's constitutional rights against illegal government intrusion." *DeLoach v. State*, 722 So. 2d 512, 518 (¶26) (Miss. 1998). "Once proceedings against a defendant reach the accusatory stage, a right to counsel attaches." *Page v. State*, 495 So. 2d 436, 439 (Miss. 1986). The accusatory stage begins at the commencement of prosecution "by binding over or recognizing the offender to compel his appearance to answer the offense." Miss. Code Ann. § 99-1-7 (Rev. 2000). Alternatively put:

> [t]he accusatory stage is reached when the law enforcement arm of the state *first* charges the accused with a crime. A charge may be formally made when a warrant is issued for the arrest of the accused. It may be made less formally when, acting without a warrant, law enforcement authorities place an accused under arrest.

*Tolbert v. State*, 511 So. 2d 1368, 1375 n.5 (Miss. 1987) (citation and internal quotation marks omitted). "Once the right to counsel has attached, interrogation may not take place absent a knowing and intelligent and voluntary waiver by the accused of his right to counsel." *Page*, 495 So. 2d at 440. In other words, police "may not, directly or clandestinely,

11

undertake interrogation in the absence of the accused's attorney without the accused's consent." *Id.* (citing *Cannaday v. State*, 455 So. 2d 713, 722 (Miss. 1984)).

¶28.    "*Miranda* applies to custodial interrogations or statements, and it does not apply to statements when [the offender] is not in custody and has the liberty to come and go as [he] pleases . . . ." *Fisackerly v. State*, 880 So. 2d 368, 370 (¶11) (Miss. Ct. App. 2004).  Still, even when a private party is conducting an independent private investigation, and not as an agent of the government, "statements must be freely and voluntarily given in order to be admissible." *Hopkins v. State*, 799 So. 2d 874, 878 (¶7) (Miss. 2001) (citation omitted).

¶29.    Dewitt's case is similar to *Fisackerly* where conversations were secretly recorded between two private parties, and the court determined that Fisackerly had not been deprived of his freedom of action in any significant way.  Like Fisackerly, Dewitt voluntarily spoke with an independently motivated private party and gave statements which were recorded. Although confronted unexpectedly by Monique, Dewitt's statements were freely and voluntarily given.  Dewitt's Fourth Amendment protections did not apply here.

¶30.    "Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989). In *Roberts v. Louisiana Downs, Inc.*, 742 F.2d 221, 224 (5th Cir. 1984), the Court stated, "for a nominally private individual's conduct to meet the state action requirement, there must be a sufficiently close connection between the state and the challenged conduct for the actor to

12

be treated as an agent of the state, or the conduct to be attributed to the state." This determination "is made by sifting facts and weighing circumstances case by case to determine if there is a sufficient nexus between the state and the particular aspect of the private individual's conduct which is complained of." *Id*. (internal quotation marks omitted). Accordingly, for private conduct to turn into state action, there must be a clear nexus between the state or law enforcement and a private investigation.

¶31. In order to determine if a private party has reached the level of an agent of the government, the court should look to the extent of the government's participation in the activities of the private party. *Id.* However, "[t]he presence of law enforcement officers who do not take an active role in encouraging or assisting an otherwise private search has been held insufficient to implicate fourth amendment interests, especially where the private party has had a legitimate independent motivation for conducting the search." *United States v. Walther*, 652 F.2d 788, 792 (9th Cir. 1981).

¶32. As previously discussed, Dewitt's Fourth Amendment right had not attached. Likewise, her Sixth Amendment rights did not attach either. Dewitt argues that her situation is similar to that of the defendant in *Page*. However, in *Page* the appellant had already been indicted and was out on bond when the communications were solicited from him. Page's right to assistance of counsel had therefore already attached and had not been waived. Conversely, Dewitt's right to assistance of counsel had not yet attached. She had not had any contact with the police at this point and was not yet owed *Miranda* rights or the right to the assistance of counsel because she had not reached the accusatory stage.

13

¶33. Monique had a legitimate independent motivation all along to conduct this search and speak with Dewitt about what Foster told her had happened. Even though Monique was asked by the police to use their equipment to record the conversation and police were present, the police did "not take an active role in encouraging or assisting" Monique's search. Accordingly, we do not find that she was acting as an agent of the police. Dewitt's alleged Constitutional rights were not violated. Additionally, there is nothing in the record to indicate Dewitt's statement was obtained through any means of coercion or force. Therefore, we find that this issue is without merit.

> III.    *Whether it was error to refuse Dewitt's proposed lesser-included-offense instructions.*

¶34. Dewitt argues that she was entitled to jury instructions D-12 amended 2 and D-13 amended 2 for sex between a teacher and pupil pursuant to Mississippi Code Annotated section 97-29-3 (Rev. 1994), as a lesser-included offense of touching a child for lustful purposes pursuant to Mississippi Code Annotated 97-5-23(2).

¶35. "This Court reviews the grant or denial of jury instructions for an abuse of discretion." *Windless v. State*, 185 So. 3d 956, 960 (¶8) (Miss. 2015). The Mississippi Supreme Court has consistently held that jury instructions are within the sound discretion of the trial court. *Goodin v. State*, 787 So. 2d 639, 657 (¶60) (Miss. 2001). A trial court in Mississippi can refuse a jury instruction if the instruction inaccurately states the law, is covered elsewhere in the instructions, "or is without foundation in the evidence." *Taylor v. State*, 137 So. 3d 283, 286 (¶9) (Miss. 2014) (citing *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991)).

¶36. The supreme court has repeatedly held that "[w]hen jury instructions are challenged

14

on appeal, we do not review them in isolation; rather, 'we read them as a whole to determine if the jury was properly instructed.'" *Rubenstein v. State*, 941 So. 2d 735, 787 (¶239) (Miss. 2006) (quoting *Milano v. State*, 790 So. 2d 179, 184 (¶14) (Miss. 2001)). When read together, "if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found . . . . There is no error if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law." *Id.* at 785 (¶224) (internal citations and quotation marks omitted).

¶37.    A lesser-included-offense instruction should be refused only when the court finds that no reasonable jury could find the defendant guilty of the lesser-included offense, and, conversely, "not guilty of at least one essential element of the principal charge." *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985). In other words, "[a] lesser-included[-]offense instruction is authorized if a rational or reasonable jury could find the defendant not guilty of the principal offense in the indictment, but guilty of the lesser-included offense." *White v. State*, 842 So. 2d 565, 575 (¶30) (Miss. 2003) (citing *Pleasant v. State*, 701 So. 2d 799, 804 (¶19) (Miss. 1997) (overruled on other grounds)). Therefore, "lesser included offense instructions may be denied only where the evidence would justify a conviction on the principal charge only." *Harper*, 478 So. 2d at 1021.

¶38.    Dewitt was convicted of touching a child for lustful purposes pursuant to Mississippi Code Annotated section 97-5-23(2), which provides:

> Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child younger than himself or herself and under the

15

age of eighteen (18) years who is not such person's spouse, with or without the child's consent, when the person occupies a position of trust or authority over the child shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court. A person in a position of trust or authority over a child includes without limitation a child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.

Dewitt proposed that a lesser-included-offense instruction of sex between teacher and pupil also be provided to the jury, which states:

If any teacher and any pupil under eighteen (18) years of age of such teacher, not being married to each other, shall have *sexual intercourse*, each with the other, they shall, for every such offense, be fined in any sum, not more than five hundred dollars ($500.00) each, and the teacher may be imprisoned not less than three (3) months nor more than six (6) months.

Miss. Code Ann. § 97-29-3 (emphasis added).

¶39. The test for determining whether one offense is a lesser-included offense of another is: [w]hether applied for the benefit of the state or defense, in order to authorize such instruction the more serious offense must include all the elements of the lesser offense, that is, it is impossible to commit the greater offense without at the same time committing the lesser-included offense. Also, there must be some evidence to support the lesser-included offense.

*Friley v. State*, 879 So. 2d 1031, 1034 (¶13) (Miss. 2004) (quoting *Sanders v. State*, 479 So. 2d 1097, 1108 (Miss. 1985)).

¶40. Dewitt argues that the elements of sex between teacher and pupil coincide with the elements of touching a child for lustful purposes and that there is evidence to support such an instruction. Dewitt argues that because these two elements are present, the jury should have been instructed accordingly. We disagree on both accounts.

16

¶41. Sex between a teacher and pupil is not a lesser-included offense of touching a child for lustful purposes. It is possible to be guilty of touching a child for lustful purposes without also being guilty of sex between a teacher and pupil. Touching a child for lustful purposes does not include all of the elements of sex between teacher and pupil. A lesser-included offense is necessarily included in the greater offense if the elements of the greater offense include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. *Harper*, 478 So. 2d at 1021. That is not the case here.

¶42. Sex between a teacher and pupil contains elements pertaining to sexual intercourse which requires penetration, and touching a child for lustful purposes does not. In fact, the jury in this case actually acquitted Dewitt of two counts of sexual battery, which does require sexual penetration. In looking at the rendered verdict, the jury determined that Dewitt, as Foster's high school coach, was in a "position of trust or authority" over Foster and that Dewitt was guilty of "handl[ing], touch[ing] or rub[bing]" Foster "for the purpose of gratifying [her] lust . . . ." Miss. Code Ann. § 97-29-3. Since the lesser offense is not necessarily included in the greater offense, sex between a teacher and pupil is not a lesser-included offense of touching a child for lustful purposes. *Harper*, 478 So. 2d at 1021.

¶43. Even if sex between a teacher and pupil was considered a lesser-included offense of touching a child for lustful purposes, there is not adequate evidence in the record to support it as a lesser-included-offense instruction. Throughout the trial, Dewitt testified and denied allegations of any sexual conduct, much less penetration, ever taking place. In fact, Dewitt testified that Foster was fabricating the entire story and that none of the allegations against

17

her were true. While "[a] defendant is entitled to have jury instructions given which present [her] theory of the case . . . ," Dewitt's argument was that Foster fabricated all of the allegations. The crime of sex between a teacher and pupil does not support Dewitt's theory of the case and is not supported by Dewitt's own arguments.

¶44. The elements of the separate offenses are distinctly different, and no facts were presented in this case to persuade this Court that the trial court erred. Therefore, we find no error in the refusal of Dewitt's proposed jury instructions.

¶45. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. TINDELL, J., NOT PARTICIPATING.**