# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00684-COA

**ANTONIO MARQUEZE JASPER A/K/A**          **APPELLANT**
**ANTONIO JASPER**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/08/2019 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN KEITH PERRY JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA BYRD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 08/25/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. On or about December 24, 2017, Jeremy Jones was murdered at a Waffle House in Robinsonville, Mississippi. At the same crime scene, Ladarius Hibbler was injured by multiple gunshots. A Tunica County grand jury indicted Antonio "Mac-T" Jasper for Count I, being first-degree murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2017); Count II, being aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2)(a) (Supp. 2016); and Count III, being a felon in possession of a firearm in violation of Mississippi Code Annotated section 97-37-5 (Rev. 2014).

¶2. On April 5, 2019, a Tunica County Circuit Court jury found Jasper guilty of first-

degree murder and possession of a firearm by a felon, but the jury was unable to reach a verdict on the aggravated assault charge. The circuit court sentenced Jasper to life imprisonment in the custody of the Mississippi Department of Corrections for his murder conviction and five years of imprisonment for possession of a firearm by a felon.

¶3. On April 11, 2019, Jasper filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial for the following reasons: (1) the evidence was insufficient to support the guilty verdicts; (2) the overwhelming weight of the evidence did not support the guilty verdicts; (3) the circuit court committed reversible error in denying Jasper's motion to dismiss Count III; (4) Juror Sharrelle Steele[1] failed to reveal that Ladarius Hibbler was her first cousin; (5) the circuit court committed reversible error by not granting Jasper's motion for a directed verdict for the State's failure to establish a prima facie case; and (6) Juror Raneisha Appleberry failed to reveal a familial relation. On April 18, 2019, without a hearing, the circuit court held that Jasper's motion was without merit and denied the motion.

¶4. Jasper appealed on April 19, 2019, raising the following issues: (1) the circuit court erred in not considering a post-trial motion that a juror was not competent to serve on the jury; and (2) a surveillance video that is not continuous in sequencing cannot be explained by a lay witness and therefore should not have been admitted into evidence. Finding that the circuit court erred in failing to conduct an inquiry into the alleged juror-misconduct issue, i.e., failing to disclose a family relation, we reverse and remand for an evidentiary hearing

---

[1] We note that Steele's first name is spelled inconsistently in the record.

to determine the issue of prejudice, if any.

## Statement of the Facts

¶5.     On or about December 24, 2017, Jeremy Jones and his girlfriend Denesha Grant went to the 56 Night Club in Robinsonville, Mississippi, on Highway 61. Antonio "Mac-T" Jasper and his friend Maurice "Blood" Ward were also at the club that same night. While at the club, Jones allegedly stepped on Jasper's shoes, and then a fight between Jasper and Jones, as well as other individuals, occurred. After the fight, Jones and Grant caught a ride to BP/Checkers, a convenience store and restaurant. While at BP/Checkers, they saw brothers Ladarius Hibbler and Terrence Hibbler. While conversing with the Hibbler brothers, Jones realized that his phone was missing. Ladarius drove Jones and Grant back to the 56 Night Club. Jones learned that Terrance Brown, the security guard for the 56 Night Club, had given Jones's phone to Ward. Jones also learned that Ward was located at the Waffle House (store number 1802) in Robinsonville on Highway 61. From there, Ladarius, Jones, and Grant headed to the Waffle House.

¶6.     Upon arriving at the Waffle House, Ladarius parked the car on the side of the building. Grant got out of the car and went inside the Waffle House. Ladarius and Jones got out of the car and spoke to Ward in the parking lot. After believing that the issue had been resolved, Ladarius and Jones got back into the car and moved the car to the front of the building. Grant remained inside the building. Around 1:40 a.m., while talking to Jones, Ladarius was looking out his front windshield when he saw Jasper running toward his vehicle.

3

¶7. Because Jasper had a gun, Ladarius got out of the car and ran. While running across the parking lot, after four or five steps, Ladarius was shot two times in the arm and one time in the hip. Jones never got out of the car and died as a result of multiple gunshot wounds, including a fatal gunshot wound to the head.[2]

¶8. Ladarius was able to get into a car with a friend and was rushed to a hospital. Jasper fled the scene. Officer Jaylin James was dispatched to the Waffle House. Dispatch told Officer James that witnesses identified the shooter as Jasper. Officer James was familiar with Jasper because of community policing, narcotics' investigations, and a previous traffic stop. Officer James searched locations where Jasper would frequent but failed to find him. After Officer James failed to locate Jasper, he reviewed the video footage provided by the Waffle House and was able to identify Jasper as the shooter. On the same day, an arrest warrant was issued for Jasper by the Justice Court of Tunica County. Jasper was detained on December 27, 2017, on the charges of murder and attempted murder.

¶9. On August 15, 2018, a Tunica County grand jury indicted Antonio Jasper for one count of first-degree murder in violation of Mississippi Code Annotated section 97-3-19(1)(a); one count of aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2)(a); and one count of being a felon in possession of a firearm in violation of Mississippi Code Annotated section 97-37-5. On August 22, 2018, Jasper waived formal arraignment and entered a plea of not guilty to the charges in the indictment.

¶10. On August 24, 2018, Jasper filed a "motion to invoke discovery" pursuant to Rule

_____

[2] Dr. Mark LeVaughn, the medical examiner, determined that the cause of Jones's death was multiple gunshot wounds and that the manner of death was homicide.

17.2 through Rule 17.9 of the Mississippi Rules of Criminal Procedure.

¶11. Jasper filed a motion to quash Count III of the indictment on September 28, 2018, because an additional charge was added to his indictment: possession of a firearm by a convicted felon. On that same day, Jasper also filed a motion in limine to prevent the State from presenting any witness for the sole purpose of narrating the video. However, the court later allowed witnesses to testify to the video footage.

¶12. On April 1, 2019, in camera, the court denied Jasper's motion to quash Count III. Although the State agreed to dismiss the additional charge at a preliminary hearing at justice court, the circuit court found that the State was not bound by promises made in justice court by the county attorney and additionally the gun charge was dismissed without prejudice in justice court. Therefore, the State could indict on this particular charge of possession of a firearm by a convicted felon.

¶13. Jasper's trial took place on April 3-5, 2019. On April 3, 2019, the court voir dired prospective jurors. During jury qualifications, the trial court asked numerous questions regarding relationships with potential witnesses, victims, attorneys, and investigators. Relative to this case, the circuit court questioned the prospective jurors regarding if any of them had any relations to or knowledge of Ladarius Hibbler:

> THE COURT: Okay. And, ladies and gentlemen, we're going to get more into this later, but this morning we're dealing with a multi-count indictment and Mr. Hibbler is one of the alleged victims in this two-count indictment. Is anyone here related by blood or marriage to Ladarius Hibbler? Is there anyone here who knows or who has a relationship with Ladarius Hibbler?

Only one juror (Juror 76) responded in the affirmative. The juror explained that she had been

5

Ladarius's substitute teacher and felt that she could still sit as a fair and impartial juror. No other prospective juror stated that they knew or had any other relation to Ladarius. After the conclusion of voir dire, the selected jurors were sworn in.

¶14. On April 4, 2019, the State presented Earnest Willis, the Waffle House's regional manager, as a witness to testify about the video surveillance system. The defense objected to the admission of the video surveillance footage because the video did not appear to be continuous. The State told the court that there were nine different cameras (one of which was inoperable), so the video would cut to different views. Therefore, the circuit court overruled the defense's objection and allowed Willis to testify as to his knowledge of the surveillance system.

¶15. Although the court allowed Officer Jaylin James to testify as to Jasper's identification in the video footage, the State rested its case without calling Officer James as a witness.

¶16. The defense moved for a directed verdict because the State failed to prove Count II, the aggravated assault on Ladarius. The court denied the defense's motion for a directed verdict, holding that based upon circumstantial evidence, the jury could have found that Jasper committed aggravated assault. Both parties proceeded to make their closing arguments.

¶17. On April 5, 2019, the jury found Jasper guilty of first-degree murder and possession of a firearm by a felon, but the jury was unable to reach a verdict on the aggravated assault charge. The circuit court sentenced Jasper to life imprisonment in the custody of the Mississippi Department of Corrections for his murder conviction and five years of

6

imprisonment for possession of a firearm by a felon.

¶18. On April 11, 2019, Jasper filed a JNOV motion or, in the alternative, a new trial for the following reasons: (1) the evidence was insufficient to support the guilty verdicts; (2) the overwhelming weight of the evidence did not support the guilty verdicts; (3) the circuit court committed reversible error in denying Jasper's motion to dismiss Count III; (4) Juror Sharrelle Steele failed to reveal that Ladarius Hibbler was her first cousin; (5) the circuit court committed reversible error by not granting Jasper's motion for a directed verdict for the State's failure to establish a prima facie case; and (6) Juror Raneisha Appleberry failed to reveal that she was related to the Vaughn family (an extension of the Hibbler family). On April 15, 2019, Sonya Dunn filed an affidavit in the circuit court, stating that she knew that Juror Sherelle Steele and Ladarius were first cousins.

¶19. On April 18, 2019, without a hearing, the circuit court held that Jasper's motion was without merit and denied the motion. Jasper filed a notice of appeal to the Mississippi Supreme Court on April 19, 2019.[3]

¶20. After his appeal was pending, on April 24, 2019, in the Mississippi Supreme Court Jasper filed a motion to transfer or remand the case to the Tunica County Circuit Court for the limited purpose of conducting a hearing on the alleged juror misconduct. In the motion, Jasper stated that the circuit court, without a hearing, denied his JNOV motion or, in the alternative, a new trial. Specifically, Jasper alleged that two jurors were related to the State's key witness and were biased. Sonya Dunn's affidavit was attached to the motion. According

---

[3] On May 14, 2019, Jasper later filed another notice of appeal that only changed the wording.

7

to Dunn's affidavit, Ladarius's alleged first cousin Sherelle Steele served as juror during Jasper's trial. Additionally, Jasper alleged that Juror Raneisha Appleberry failed to reveal that she was related to the Vaughn family (an extension of the Hibbler family). After assignment, this court denied Jasper's motion to transfer or remand the case because the issue had already been considered by the circuit court. We stated that if properly raised in briefing, however, this court would consider the issue with the merits of the appeal.

¶21. On appeal, Jasper raises the following issues: (1) the trial court erred in not considering a post-trial motion that a juror was not competent to serve on the jury;[4] and (2) a surveillance video that was not continuous in sequencing cannot be explained by a lay witness and therefore should not have been admitted into evidence.

**Standard of Review**

¶22. "This Court may not reverse the trial court's decisions regarding jury selection unless there is an abuse of discretion." *Johnson v. State*, 224 So. 3d 549, 551-52 (¶5) (Miss. Ct. App. 2017). "The standard of review for either the admission or exclusion of evidence is abuse of discretion." *Id*. If this Court finds "an erroneous admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party." *Id*.

**Discussion**

    **I.    Whether the trial court erred in failing to grant a new trial in response to Jasper's claim that a juror failed to respond to questions during voir dire.**

---

[4] While Jasper raised the issue of juror misconduct as to a second juror, he did not raise that issue on appeal. Therefore, we will not address this issue.

¶23.    Jasper argues that he is entitled to a new trial with a new jury because a juror failed to disclose substantial information regarding a relationship with a witness. After the judgment and sentencing, Sonya Dunn provided an affidavit that indicated Ladarius Hibbler's first cousin Sherelle Steele was a juror. Dunn's affidavit provided the following:

> I know Fred Steele and I know that he is Ladarius Hibbler's father; I also know Shelby Steele. And I know that Shelby Steele is Juror Sherelle Steele's father; I know that Shelby Steele, and Fred Steele are brothers. And this relationship would make Juror Sherelle Steele and Ladarius Hibbler first cousins; and upon information and belief Sherelle Steele served on Defendant's jury, and that Ladarius Hibbler testified as a witness in Defendant's trial.

After review of the record, we find that the circuit court erred.

¶24.    "This court has held 'when a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause, the trial court must grant a new trial.'" *Johnson v. State*, 224 So. 3d 549, 552 (¶11) (Miss. Ct. App. 2017).

¶25.    In *Odom v. State*, 355 So. 2d 1381, 1383 (Miss. 1978), the Mississippi Supreme Court held the following:

> [When] a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited.

Furthermore, "[i]f the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably

9

could be inferred from the juror's failure to respond." *Id*. "The failure of a juror to respond to a relevant, direct, and unambiguous question leaves the examining attorney uninformed and unable to ask any follow-up questions to elicit the necessary facts to intelligently reach a decision to exercise a peremptory challenge or to challenge a juror for cause." *Id*.

¶26.    Where "a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause . . . **[w]e presume prejudice**." *Merchant v. Forest Family Practice Clinic P.A.*, 67 So. 3d 747, 757 (¶22) (Miss. 2011) (emphasis added) (other emphasis omitted). This Court has held that a defendant "bears the burden of showing he was 'prejudiced by the jury selected or that the jury was biased or less than impartial.'" *Chisholm v. State*, No. 2018-KA-01439-COA, 2020 WL 1685536, at *3 (¶10) (Miss. Ct. App. Apr. 7, 2020) (quoting *Dewitt v. State*, 269 So. 3d 388, 395 (¶19) (Miss. Ct. App. 2018)).

¶27.    In *Odom*, the Mississippi Supreme Court found that Odom established facts that he suffered prejudice in jury selection. *Odom*, 355 So. 2d at 1383. After the defendant's conviction, a motion for a new trial was filed based upon the failure of a juror to respond to a question during the voir dire examination of the panel. *Id*. at 1382. The circuit court held a hearing, which established that one of the jurors was the brother of a police officer involved in the investigation for which the defendant was convicted. *Id*. However, the circuit court denied the motion for a new trial and the defendant appealed. *Id*. The Supreme Court found that the failure of the juror to respond to the inquiry on voir dire clearly had an adverse effect on the defendant's right to challenge the juror. *Id*. Therefore, the Supreme Court reversed

10

the judgement and sentence and remanded the cause for a new trial. *Id*. at 1383.

¶28.	This Court recently addressed the issue of juror misconduct in *Green v. State*, 282 So. 3d 529 (Miss. Ct. App. 2019). In *Green*, we found that the Tunica County Circuit Court properly conducted an investigation into whether juror misconduct resulted in an unfair trial. *Id*. at 530 (¶1). After Green's conviction at trial, he filed a motion for a JNOV or, alternatively, a new trial, with one of his arguments being that "one of the jurors on the jury panel failed to disclose pertinent information regarding her connection with the victim and witnesses in this case." *Id*. at 531 (¶8). However, the circuit court held a post-trial hearing on the matter and found that there was no juror misconduct because the juror properly informed the court of her relationships with the victim and witnesses, but Green's counsel failed to do a more diligent and thorough inquiry during voir dire. *Id*. at 534 (¶24). "[T]he trial court properly found after inquiry into the nature of the information that was withheld, that no prejudice presumed—which is a finding of fact." *Id*. at 534 (¶25). This Court therefore affirmed the trial court's holding. *Id*. at (¶27).

¶29.	Unlike *Green*, where the circuit court conducted a hearing into juror misconduct, in this case, the court failed to hold a hearing or even inquire into the issue of juror misconduct. As stated in *Merchant* and *Green*, we presume prejudice where "a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause." *Id*. at 534 (¶23) (quoting *Merchant*, 67 So. 3d at 757 (¶22)). Jasper was not given the opportunity to challenge the cause of juror misconduct because there was no hearing on the matter. When

11

there are allegations as serious as the violation of a juror's oath, it is imperative that a trial court conduct a hearing. This is not an allegation of a half-truth of a corollary matter, but whether there was a close blood relation between a victim and a juror charged with determining guilt or innocence. Regardless of whether there was a hung jury on the count involving the juror's alleged first cousin, the point is that the process was not followed per our precedent. Furthermore, the juror not only sat as a juror on the count involving the juror's alleged cousin, but she also served as a juror for the counts of murder and possession of a firearm by a felon.

¶30. Regarding the State's argument that Jasper suffered no prejudice because the jury could not agree on a verdict for the aggravated assault charge, this Court has held, "Common sense suggests that the presence on the jury of a person who bore this relationship to the victims and who remained silent in the face of a direct question regarding whether there was any knowledge of the victims, presents a potential for prejudice to the rights of the accused for a fair trial." *Burroughs v. State*, 767 So. 2d 246, 253 (¶22) (Miss. Ct. App. 2000). Moreover, the jury's failure to return a verdict on the aggravated-assault count could show prejudice in this instance. Had Jasper been *acquitted*, then we might find the State's position that prejudice was lacking to be persuasive. *See Skilling v. United States*, 561 U.S. 368 (2010) ("It would be odd for an appellate court to presume prejudice in a case in which jurors' actions run counter to that presumption."). However, because there was a hung jury and a resulting mistrial, prejudice is not necessarily rebutted as the alleged first cousin/juror may have been the only one voting "guilty" on that count, preventing Jasper from being

12

acquitted of the count.

¶31.   Additionally, contrary to *Green*, this is not a case where counsel failed to conduct a thorough inquiry during voir dire.  In *Merchant*, the Mississippi Supreme Court found that a juror failed to respond affirmatively to relevant questions asked by the circuit judge despite having "substantial knowledge of the information sought to be elicited," such that he was under an "obligation to bring that information to the attention of the court."  *Merchant*, 67 So. 3d at 756 (¶21).  The juror's "lack of candor during voir dire, and subsequent disclosures and opinions which surfaced only in jury deliberation, resulted in fundamental unfairness to the Estate."  *Id*. at 757 (¶22).  Although the circuit court held a hearing on the post-trial motion regarding juror misconduct, the court incorrectly found that there was no prejudice. *Id*. at 754 (¶11).  This Court reversed the circuit court's denial of the Estate's "Motion to Set Aside or Void Jury Verdict, to Void or Set Aside Final Judgment and for New Trial" as to juror misconduct, and remanded for a new trial.  *Id*. at (¶24).

¶32.   Here, the circuit court asked relevant, unambiguous questions: "Is anyone here related by blood or marriage to Ladarius Hibbler?  Is there anyone here who knows or who has a relationship with Ladarius Hibbler?"  However, only one juror, who was not Steele, answered in the affirmative.  Assuming (1) that Juror Steele is related to Ladarius and (2) that she failed to disclose the relationship during voir dire, the defense was hindered from asking follow up questions.  Despite having substantial knowledge of the information sought to be elicited, Steele failed to respond affirmatively to the court's questions.  Jasper was only informed of the juror's dishonesty after his conviction.  Therefore, he raised the issue of juror

13

misconduct in his motion a JNOV or, alternatively, a new trial. However, despite the motion and uncontested affidavit alleging juror misconduct, unlike *Odom*, *Green*, or *Merchant*, the circuit court, without its reasoning, did not hold an evidentiary hearing inquiring into the matter. The circuit court, without reasoning, denied Jasper's motion.

¶33. Additionally, the State's argument that Jasper was not prejudiced by juror misconduct because there was a mistrial regarding the aggravated assault charge against Ladarius is without merit. Because the counts were not severed and grew out of the same case, Juror Sharrelle Steele sat on the jury for all these counts against Jasper, not solely the aggravated assault charge regarding Ladarius. Therefore, her vote was considered on each charge against Jasper. Furthermore, if the information provided by Sonya Dunn's affidavit were not true, the State had the opportunity to contest it, but failed to do so.

¶34. Because the juror failed to disclose substantial and prejudicial information, and the court failed to abide by precedent to conduct an evidentiary hearing, we find that the circuit court erred.

II. **Whether the trial court erred in admitting the Waffle House video surveillance footage and any narration or commentary of the video from lay witnesses**.

¶35. Jasper argues that the trial court erred when it allowed Earnest Willis and Officer Jaylin James to testify to Jasper's identification on the video footage. However, over the State's objection that Willis's testimony may have required an expert, the court allowed the testimony without an objection by the defense. Additionally, because the State never called Officer James as a witness, he never testified to the identification of Jasper on the video

14

before the jury. Furthermore, Jasper failed to raise this issue in his JNOV motion. Therefore, this issue is procedurally barred.[5]

**Conclusion**

¶36. Finding that Jasper was unfairly prejudiced by juror dishonesty in withholding substantial information, we hereby reverse and remand this case to the circuit court to hold an evidentiary hearing regarding the juror misconduct.

¶37. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR.**

---

[5] In the criminal context, we have held that "a defendant waives his objection where an objection is made and a definitive ruling is not obtained nor any corrective action requested." *Walters v. State*, 720 So. 2d 856, 864 (Miss.1998).

15