# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00395-COA

MICHAEL WILSON A/K/A MICHAEL FLOYD
WILSON A/K/A PRETTY BOY FLOYD

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

DATE OF JUDGMENT:                02/27/2020
TRIAL JUDGE:                     HON. KATHY KING JACKSON
COURT FROM WHICH APPEALED:       GREENE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                 BY: MOLLIE MARIE McMILLIN
                                 MICHAEL WILSON (PRO SE)
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: META S. COPELAND
DISTRICT ATTORNEY:               ANGEL MYERS McILRATH
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 05/25/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., GREENLEE AND WESTBROOKS, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Michael Wilson was convicted in the Greene County Circuit Court of escape of a prisoner. The court sentenced Wilson, as a violent habitual offender, to serve life without eligibility for parole in the custody of the Mississippi Department of Corrections (MDOC).

¶2.     Wilson appealed. Subsequently, Wilson's appellate counsel filed a brief in compliance with *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), certifying to this Court that the record presented no arguable issues for appeal. Wilson then filed a pro se brief, claiming (1) he was not competent to stand trial, (2) he was entitled to a change of venue, (3) the jury

was biased, (4) he is entitled to a new trial based on newly discovered evidence, (5) his sentence is illegal and violates the Eighth Amendment, and (6) he received ineffective assistance of counsel.

¶3. After review, we find that Wilson's appeal presents no arguable issues. Therefore, we affirm Wilson's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶4. On July 5, 2018, Wilson escaped from prison while incarcerated at South Mississippi Correctional Institution (SMCI) in Greene County, Mississippi.

¶5. At Wilson's trial, Lieutenant Austin Williams testified that on July 5, Wilson told him that he had been threatened and that he could not live in his assigned housing unit. According to Lieutenant Williams, Wilson did not appear to be distressed or have any visible marks on his body, so he was told to return to his building. Later, another officer reported that Wilson had not returned to the building and that a T-shirt was found in the razor wire of the prison fence.

¶6. Meanwhile, Russell Turner with the Greene County Herald went home for lunch and found Wilson sitting on the steps of his carport. Turner testified that Wilson told him his four-wheeler had gotten stuck, his wife was pregnant, and he needed a ride to the hospital. Unaware of the prison escape, Turner agreed to give Wilson a ride to the hospital. According to Turner, Wilson seemed flustered. He did not get "bad vibes" from Wilson, "just odd vibes." Turner testified that he watched Wilson go inside the hospital and then told a nearby officer that he might want to investigate. Then Turner attempted to call the sheriff.

2

¶7. Russell Houston, an internal affairs investigator with MDOC, testified that he attempted to locate Wilson after his escape. According to Houston, the first tip came from Turner, but nobody at the hospital had seen Wilson. While canvassing the area around the hospital, a man said that his wife had taken Wilson to another hospital in Lucedale. Then Houston learned that another man had picked up Wilson on Highway 26 and driven him to Ocean Springs. Houston testified that Wilson was finally apprehended in a trailer park.

¶8. Sean Smith, the Director of Investigations at MDOC, testified that he participated in Wilson's interview after he was apprehended on July 8, 2018.[1] Smith testified that during the interview Wilson admitted that he had escaped from SMCI. Smith later acknowledged that Wilson stated he had been threatened, assaulted, and felt like he was about to be killed at SMCI. Smith testified that it was possible that Wilson had been threatened, but he explained that he could not investigate further because Wilson did not provide any names.

¶9. The witnesses from SMCI/MDOC acknowledged that there had been a staff shortage at SMCI in 2018. Houston admitted that the staff shortage had made it difficult to maintain security and control of the facility, and Smith admitted that it had endangered the safety of the inmates. Finally, Lieutenant Williams acknowledged that there had been multiple assaults against inmates in 2018.

¶10. After the State rested its case, the defense called SMCI Warden Andrew Mills. According to Mills, he had reviewed Wilson's record, and Wilson had "a long history of manipulating his housing[.]" Mills did not recall Wilson raising specific concerns to him,

---

[1] A recording of the interview was played for the jury at trial.

3

but Mills testified that Wilson must have said that he feared for his life at some point to have been moved so many times. Mills acknowledged the staff shortage at SMCI and testified that they were not able to maintain control and provide for the safety of all the inmates during that time. Mills also acknowledged that inmates had relayed threats to staff and were sent back to the same building with no investigation. Mills testified, "I'm sure [Wilson] probably was threatened," but he testified that he was not aware of any specific incidents.

¶11.    Finally, Devin Tatsch testified that he and Wilson had been in prison at the same time. Tatsch testified that on July 2, 2018, he was hit in the face with a padlock because Wilson was his father.[2] He also testified that Wilson was jumped, but he did not see it. And he testified that he witnessed gang members attempting to "track [Wilson] down." However, Tatsch did not have any knowledge as to whether Wilson notified SMCI employees about these issues.

¶12.    After considering the evidence presented at trial, the jury found Wilson guilty as charged. Wilson appeals.

## DISCUSSION

¶13.    In *Lindsey*, our supreme court adopted a "procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal[.]" *Lindsey*, 939 So. 2d at 748 (¶18). First, "[c]ounsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-[(5), (8)]." *Id.* In the brief,

_____

[2] Tatsch testified that Wilson was his biological father; however, he stated that a DNA test had not been conducted.

4

counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Id*. Next, counsel must forward a copy of the brief to the client, informing the client that counsel was unable to discover any arguable issues in the record and advising the client that he or she has a right to file a pro se brief. *Id*.

¶14. Wilson's appellate counsel submitted a brief in compliance with *Lindsey*. Wilson then filed a pro se supplemental brief, asserting the following assignments of error: (1) he was not competent to stand trial, (2) he was entitled to a change of venue, (3) the jury was biased, (4) he is entitled to a new trial based on newly discovered evidence, (5) his sentence is illegal and violates the Eighth Amendment, and (6) he received ineffective assistance of counsel.

¶15. We note that Wilson has not complied with the requirement that assignments of error must be supported by "the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(7). "Arguments that do not comply with Rule 28(a)(7) are 'procedurally barred.'" *Hill v. State*, 215 So. 3d 518, 524 (¶10) (Miss. Ct. App. 2017) (quoting *Cowart v. State*, 178 So. 3d 651, 666 (¶39) (Miss. 2015)). Nevertheless, we will review the issues raised in Wilson's pro se brief to determine whether they require additional briefing by his appointed counsel. *See Lindsey*, 939 So. 2d at 748 (¶18) ("Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances

5

warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.").

## I. Whether Wilson was competent to stand trial.

¶16. Wilson claims that he was not competent to stand trial. Mississippi Rule of Criminal Procedure 12.2(a) provides that "[i]f at any time before or after indictment, the court, on its own motion or the motion of any party, has reasonable grounds to believe that the defendant is mentally incompetent, the court shall order the defendant to submit to a mental examination." MRCrP 12.2(a). "In order to be deemed mentally competent, a defendant must have the ability to perceive and understand the nature of the proceedings, to communicate rationally with the defendant's attorney about the case, to recall relevant facts, and to testify in the defendant's own defense, if appropriate." MRCrP 12.1(a). But "[t]here is a presumption of mental competency." MRCrP 12.1(a). "The defendant bears the burden to prove 'by substantial evidence that he or she is mentally incompetent to stand trial.'" *Black v. State*, 301 So. 3d 806, 813 (¶21) (Miss. Ct. App. 2020) (quoting *Pitchford v. State*, 240 So. 3d 1061, 1067 (¶32) (Miss. 2017)).

¶17. "On review, the pertinent question is whether 'the trial judge received information which, objectively considered, should reasonably have raised a doubt about the defendant's competence and alerted [the judge] to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense.'" *Moore v. State*, 287 So. 3d 189, 196 (¶22) (Miss. 2020) (quoting *Harden v. State*, 59 So. 3d 594, 601 (¶14) (Miss. 2011)). Although Wilson asserts on appeal that he has

6

undergone psychotherapy, a review of the record shows that Wilson did not present any information at trial to raise a doubt about his competency to stand trial or to rationally aid in his defense. Furthermore, neither the court nor Wilson's attorney raised any concerns about his competency. Because there was no basis to question Wilson's competency, this issue is without merit.

**II.  Whether Wilson was entitled to a change of venue.**

¶18.  Wilson claims that he was entitled to a change of venue. Our supreme court has held that "[a]n application for change of venue must conform strictly to the statute." *Neal v. State*, 15 So. 3d 388, 401 (¶28) (Miss. 2009) (quoting *Baldwin v. State*, 732 So. 2d 236, 241 (¶10) (Miss. 1999)). Mississippi Code Annotated section 99-15-35 (Rev. 2015) "requires that the prisoner make a sworn, written application supported by the affidavits of at least two credible persons attesting to the fact that the prisoner will be unable to receive a fair and impartial trial in the county where the offense is charged because of pretrial publicity or ill will toward the defendant by the general public." *Neal*, 15 So. 3d at 401 (¶28) (citing Miss. Code Ann. § 99-15-35 (Rev. 2007)). Wilson did not move for a change of venue, nor did he even minimally comply with the statutory requirements. Because Wilson did not apply for a change of venue in the trial court, he is procedurally barred from raising this argument on appeal. *Id*.

**III.  Whether the jury was biased.**

¶19.  Wilson claims that he was not afforded an impartial jury because the jurors admitted that they had heard about his case prior to trial. He also asserts that most of the jurors

worked at SMCI or were related to someone at SMCI.

¶20. "A defendant 'bears the burden of showing he was prejudiced by the jury selected or that the jury was biased or less than impartial.'" *Chisholm v. State*, 298 So. 3d 1046, 1050 (¶10) (Miss. Ct. App. 2020) (quoting *Dewitt v. State*, 269 So. 3d 388, 395 (¶19) (Miss. Ct. App. 2018)). This Court has held that "[t]ypically, 'if a party fails to object to a juror before the jury is empaneled, that party waives any right to complain of the jury's composition at a later time.'" *Dewitt*, 269 So. 3d at 395 (¶17) (quoting *Langston v. State*, 791 So. 2d 273, 281 (¶17) (Miss. Ct. App. 2001)). Because Wilson failed to raise an objection before the jury was empaneled, he waived this issue.

¶21. Nevertheless, we note that a juror stated that he had heard about the alleged escape prior to trial, but he stated that he could remain fair and impartial. Likewise, a few jurors stated that they had family members who had been incarcerated at SMCI, but they also stated that they could remain fair and impartial. Wilson has not shown that they were less than impartial nor were any contemporaneous objections made. Therefore, this issue is without merit.

> **IV. Whether Wilson is entitled to a new trial based on newly discovered evidence.**

¶22. Wilson suggests that he is entitled to a new trial based on newly discovered evidence. Wilson urges this Court to consider "material fact[s]" that require the reversal of his conviction. However, on appeal, this Court limits its inquiry "to those facts 'contained strictly in the record, and not upon mere assertions in the briefs.'" *Ross v. State*, 16 So. 3d 47, 60 (¶35) (Miss. Ct. App. 2009) (quoting *Ward v. State*, 935 So. 2d 1047, 1057 (¶29)

8

(Miss. Ct. App. 2005)). Because Wilson argues nothing more than mere assertions, we cannot consider them.

¶23. Furthermore, we note that a movant seeking a new trial based on newly discovered evidence must show:

> (1) the new evidence was discovered after the trial; (2) it could not by due diligence have been discovered prior to trial; (3) it is material to the issue and not merely cumulative or impeaching; and (4) the new evidence will probably produce a different result or verdict in the new trial.

*Wilson v. State*, 256 So. 3d 25, 27 (¶9) (Miss. Ct. App. 2018) (quoting *Van Norman v. State*, 114 So. 3d 799, 801 (¶11) (Miss. Ct. App. 2013)). "Relief must be denied if the movant fails to meet any one of these four elements." *Id*. at 27-28 (¶9). The "newly discovered evidence" presented in Wilson's pro se brief was either known prior to trial or "reasonably discoverable" at the time of trial. Therefore, Wilson does not meet the standard for a new trial based on newly discovered evidence.

## V. Whether Wilson's sentence is illegal and violates the Eighth Amendment.

¶24. Wilson claims his sentence exceeds the maximum authorized by law and is therefore illegal. He also claims that a sentence of life without the possibility of parole for a nonviolent crime constitutes cruel and unusual punishment under the Eighth Amendment.

¶25. "An illegal sentence is 'one that does not conform to the applicable penalty statute.'" *Shies v. State*, 185 So. 3d 1081, 1085 (¶13) (Miss. Ct. App. 2016) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (¶16) (Miss. 2013)). Wilson was sentenced as a violent habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev. 2015). This section

provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

Miss. Code Ann. § 99-19-83. The record shows that Wilson had previously been convicted of burglary of a dwelling in 2010 and was sentenced to twenty-five years, as well as murder in 2015 and was sentenced to a term of life in MDOC custody. Further, murder is a crime of violence. Miss. Code Ann. § 97-3-2 (Rev. 2014). Because Wilson's sentence conforms to the applicable penalty statute, it is not illegal.

¶26. Additionally, "[o]ur supreme court has consistently held that sentences under the habitual-offender statute do not constitute cruel and unusual punishment." *Skinner v. State*, 120 So. 3d 419, 426 (¶25) (Miss. Ct. App. 2013) (quoting *Cummings v. State*, 29 So. 3d 859, 861 (¶5) (Miss. Ct. App. 2010)). For these reasons, we find no abuse of discretion in the sentence imposed by the circuit court. *See Cummings v. State*, 58 So. 3d 715, 719 (¶19) (Miss. Ct. App. 2011) ("This Court reviews the terms of a sentence under an abuse-of-discretion standard."). This issue is without merit.

### VI. Whether Wilson received ineffective assistance of counsel.

¶27. Finally, Wilson claims that he received ineffective assistance of counsel. Specifically,

10

Wilson asserts that his trial counsel previously worked at SMCI and vaguely asserts that his trial counsel should have done more at trial.

¶28.   "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Bishop v. State*, 282 So. 3d 633, 644 (¶46) (Miss. Ct. App. 2019) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)).  This Court will only consider an ineffective-assistance-of-counsel claim on direct appeal when "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020).  Ineffective-assistance-of-counsel claims may also be resolved on direct appeal "when the record affirmatively shows that the claims are without merit." *Id*.

¶29.   Here, the record does not affirmatively show ineffectiveness of constitutional dimensions nor do the parties stipulate that the record is adequate for this Court's review. As the State points out, the record is silent as to whether Wilson's trial attorney was affiliated with SMCI; therefore, the record does not affirmatively show that the claim is without merit. Accordingly, we decline to address the claim on direct appeal but preserve Wilson's right to pursue his claim through a motion for post-conviction collateral relief.

## CONCLUSION

¶30.   Pursuant to *Lindsey*, we have independently reviewed the record and concluded that there are no issues that warrant reversal.  With regard to Wilson's ineffective-assistance-of-

counsel claim, we preserve Wilson's right to pursue his claim through a motion for post-conviction collateral relief.

¶31.	**AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McCARTY AND EMFINGER, JJ., CONCUR.  McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE AND SMITH, JJ., NOT PARTICIPATING.**